EXHIBIT A

| | |
|---|---|
| District Court, Larimer County, Colorado<br>Court Address:<br>201 LaPorte Avenue, Suite 100<br>Fort Collins, CO 80521 | DATE FILED: November 29, 2022 11:04 AM<br>FILING ID: AF86C2FC2F389<br>CASE NUMBER: 2022CV30816 |
| **KAORI KEYSER,**<br>**Plaintiff**<br><br>v.<br><br>**TERRACON CONSULTANTS, INC.,**<br>**Defendant** | ▲COURT USE ONLY▲ |
| Plaintiff's Attorney:<br>Kelli Riley, #44828<br>Rebekah Berry-Chaney, #46275<br>Riley Law LLC<br>1750 Foxtrail Drive, Unit B<br>Loveland, CO 80538<br>Phone Number: 970-573-6442 / 970-744-3937<br>E-mail: Kelli@rileylawllc.com / Rebekah@rileylawllc.com | Case Number:<br><br><br>Division        Courtroom |
| **COMPLAINT** | |

Plaintiff Kaori Keyser, by and through undersigned counsel, of Riley Law LLC, hereby file this complaint against Terracon Consultants, Inc ("Terracon"). In support of her complaint, Plaintiff states the following:

## STATEMENT OF THE CASE

1. Ms. Keyser was an employee of Defendant. Ms. Keyser has a medically diagnosed disability and requested reasonable, available accommodations from her employer of temporary reduced hours per week to obtain necessary treatment related to her disability and requested prompt feedback from her supervisor to identify any workplace deficiencies, which Defendant initially approved. Following Plaintiff's temporary reduction of hours and upon returning to full time hours, she suffered the adverse employment actions of discipline and eventual termination from employment as a result of her disability. Plaintiff brings claims of disability discrimination on the basis of an

1

actual disability and retaliation. Plaintiff brings these claims to recover compensatory damages, punitive damages, and emotional distress.

2. Plaintiff was employed as a "field environmental engineer" for Defendant and paid a salary. Plaintiff regularly worked over 40 hours per week prior to and following her temporary reduction of hours she requested. Plaintiff's position, duties, and tasks did not qualify for an exemption from overtime. The Colorado Wage Claim Act, § 8-4-101, et seq. (the "Wage Claim Act") and the Colorado Minimum Wage Act, C.R.S. §8-6-101, et seq., as implemented by COMPS #38 and the Fair Labor Standards Act, 29 U.S.C. § 201, et seq. (the "FLSA") contain various rules regarding employee wages and working hours. Defendant has violated Colorado's Wage Claim Act and Minimum Wage Act and the FLSA by failing to pay "time and one-half" premium pay for all overtime hours worked by Plaintiff. Plaintiff, therefore, files this action also to recover wages owed to her.

**JURISDICTION AND VENUE**

3. Plaintiff Kaori Keyser brings this action under the Colorado Anti-Discrimination Act. as amended, C.R.S. § 24-34-401 et seq. (CADA), the Americans With Disabilities Act of 1990, as amended, 42 U.S.C. § 12102(2), and the Colorado Wage Claim Act, § 8-4-101.

4. Plaintiff has exhausted all administrative prerequisites to the filing of this action.

5. Plaintiff requested a Notice of Right to Sue from the CCRD and EEOC on October 4, 2022.

6. Plaintiff received a Notice of Right to Sue from the CCRD on October 6, 2022.

7. The Court has jurisdiction over Defendant because it is a corporation registered to do business and operating under the laws of the State of Colorado.

8. The Court has jurisdiction over Plaintiff because she is at all times relevant, a resident of the State of Colorado.

9. This Court has subject matter jurisdiction over the case under Colo. Const., Art. VI., §9 and pursuant to C.R.S. §13-1-124.

10. Venue is proper because Defendant is a corporation that has a location and conducts business in Fort Collins, Larimer County, Colorado, C.R.C.P. 98(c)(1), Larimer is the county designated in the complaint, C.R.C.P. 98(C)(1) and this is an action arising from acts that were committed in Larimer County, C.R.C.P. 98(C)(5).

## PARTIES

11. Plaintiff, Kaori Keyser, is and was, at all relevant times hereto, a resident of the State of Colorado, and was an employee of Defendant, and performed work for Defendant within the State of Colorado.

12. Defendant, Tarracon, is and was at all relevant times hereto, a corporation registered to do business and operating under the laws of the State of Colorado, with its principal place of business located at 10841 S. Ridgeview Road, Olathe, KS 66061 with an office location in Fort Collins at 1901 Sharp Point Drive, Fort Collins, CO 80525.

13. At all relevant times hereto, Defendant was and continues to be a covered entity and employer "engaged in an industry affecting commerce" within the meaning of the Americans with Disabilities Act, as amended, 42 U.S.C. § 1211(2), (5)(A).

14. At all relevant times hereto, Defendant was and continues to be a covered employer within the meaning of the Colorado Anti-Discrimination Act, C.R.S. § 24-24-401(3).

15. At all relevant times hereto, Defendant was and continues to be an "employer" within the meaning of the Colorado Minimum Wage Act, C.R.S. §8-6-101, et seq., and the FLSA.

## FACTS

16. Defendant, Terracon is a consulting engineering firm specializing in environmental, facilities, geotechnical, and materials services which operates out of approximately 6 locations in Colorado and 175 locations across the United States.

17. Plaintiff was hired as a Field Environmental Engineer with Terracon on or about March 8, 2021.

18. During the onboarding process, Plaintiff disclosed her disability to Customer Service Representative, Pati Awapara, when the results of a pre-employment drug screening were delayed due to needing a verification of a medication prescription which Plaintiff holds due to her disability.

19. Plaintiff also disclosed her status as an individual with a disability in writing via the Voluntary Self Identification of a Disability Form which she signed and provided to Terracon on her first day of employment.

20. Plaintiff began experiencing symptoms of her disability on or around September 2021

21. In September 2021, Plaintiff disclosed her disability to her supervisor.

22. In September 2021, Plaintiff requested a reasonable accommodation of a temporarily reduced schedule to allow her to obtain necessary treatment related to her disability.

23. In September 2021, Plaintiff also requested a reasonable accommodation of prompt feedback from her supervisor about her work performance so she could address any deficiencies that may have been caused by the symptoms related to her disability.

24. Defendant initially approved Plaintiff's request for a temporarily reduced schedule.

25. After the discussion with her supervisor in September 2021, Plaintiff determined that she would work with Terracon's Employee Assistance Program which offered a Short-Term

Disability plan. Under Defendant's Short Term Disability plan, she would work a modified part-time work schedule of up to 32 hours per week.

26. Plaintiff's modified schedule due to her disability was intended to be in place from October 1, 2021, through November 1, 2021.

27. Before beginning the modified schedule, Plaintiff disclosed the details of the modified schedule to her supervisor, including her return to full time work on November 1, 2021.

28. During the time of her modified schedule in October of 2021, Plaintiff repeatedly reminded her supervisor and several coworkers of her availability to work full time beginning the first week of November 2021.

29. After returning to full-time work on November 1, 2021, Plaintiff found that she was not assigned enough work to fill a full-time schedule.

30. After reporting to full-time work on November 1, 2021, Plaintiff noticed a marked change in her supervisor's communication with her.

31. After November 1, 2021, although Plaintiff informed her supervisor and other project managers that she needed additional work on multiple occasions, her requests were largely ignored.

32. After November 1, 2021, Plaintiff also informed other Terracon employees with whom she regularly worked that she was available to take on additional work.

33. In one instance during a January 21, 2022, meeting, it became clear that her supervisor failed to communicate to her that there was additional sample collection work that she could perform.

34. Defendant requires employees, including field environmental engineers, to track time spent working, including time spent on matters that could be billed to clients.

35. Defendant's time tracking includes both "chargeable" to clients and "non-chargeable" tasks that are required to be tracked by employees.

36. Plaintiff made good faith attempts to report all of her time worked as accurately as possible throughout her employment with Terracon.

37. On January 18, 2022, Plaintiff's supervisor raised the issue of Plaintiff's chargeability goal for that week.

38. The importance of meeting chargeability goals had not been a significant concern of Plaintiff's supervisor prior to Plaintiff's accommodation of a temporarily modified schedule in October 2021.

39. On or before January 18, 2022, Plaintiff had sought out resources from the Division of Vocational Rehabilitation ("DVR") on job-related services for a potential increased work load that she anticipated due to being the only field employee after the recent departure of a team member and an injury of another.

40. Plaintiff, in good faith, reported this time as "non-chargeable" time worked according to her reading of the Department of Labor Fact Sheet #22 which states "[A]ttendance at lectures, meetings, training programs and similar activities need not be counted as working time only if four criteria are met, namely: it is outside normal hours, it is voluntary, not job related, and no other work is concurrently performed". Because Plaintiff sought out DVR services within normal working hours for job related activities her understanding was those hours needed to be counted as hours worked, but not charged to any specific client.

41. On or around January 18, 2022, Plaintiff's supervisor informed her he would need to create a Personal Improvement Plan for Plaintiff because he was getting pushback regarding Plaintiff's chargeability from his supervisors.

42. Plaintiff contacted Human Resources on January 19, 2021, requesting an appointment to obtain clarification about the expectations and Personal Improvement Plan on which she was being placed.

43. Plaintiff never received a response to her January 19, 2021, request for a clarification.

44. On January 24, 2022, Plaintiff received notice that she was being terminated for two instances of "timesheet fraud".

45. The January 24, 2022, notice was the first and only time Plaintiff or any employee of Terracon ever mentioned a concern of "timesheet fraud" to Plaintiff during the course of her employment.

46. Even though Plaintiff made multiple requests that her supervisor promptly notify her of any issues with her work performance because of her disability, her supervisor did not raise any concerns of timesheet fraud until the date of her termination.

47. In both instances of alleged "timesheet fraud" Plaintiff accurately reported her time while experiencing an exacerbation of her disability or seeking to manage the symptoms related to her disability.

48. Based on the job duties actually performed by Plaintiff for Defendant, her work was not subject to an exemption from overtime.

49. Plaintiff regularly worked more than forty hours per week for Defendants.

50. Plaintiff worked one or more hours in excess of forty hours per week, over the course of 46 weeks for which she was not compensated at the premium rate of time-and-a-half for overtime.

51. Defendants' records of Plaintiff's pay show a pay at a salary of $1000 per week, and for Paid Time Off at a rate of $25/hour.

52. Plaintiff is owed for an estimated 84.35 hours of overtime premium pay, estimated at an additional $3,163.12.

## FIRST CLAIM FOR RELIEF

(Discrimination on the Basis of Disability-CADA)

53. Plaintiff hereby incorporates all allegations of the Complaint as though fully set forth herein.

54. Plaintiff is a member of a protected group – she is or was, at the time of termination from employment, a disabled individual as defined by the Colorado Anti-Discrimination Act, C.R.S. § 24-34-401(3), *et. seq.*

55. Plaintiff's disability, major depression and bipolar disorder, substantially limited her in one or more major life activities.

56. Plaintiff was otherwise qualified for the position she was performing and was performing her job in a satisfactory manner.

57. When Plaintiff requested the reasonable accommodations, including that which would allow her to temporarily work a reduced schedule and obtain timely feedback on her performance, Defendant approved the request. These requests did not place any undue burden on Defendant.

58. After Petitioner returned from her disability related reduced schedule, Defendant failed to provide Petitioner adequate work tasks to fill full time hours.

59. Defendant failed to provide timely feedback to Petitioner including that it was their position that time researching disability related resources to perform her job duties was not time worked for purposes of her time tracking.

60. Defendant failed to provide any feedback to Petitioner of concerns of "timesheet fraud" prior to the date of her termination.

61. Defendant consciously and purposefully discriminated against Plaintiff because of her disability in violation of CADA by refusing to provide reasonable accommodation of timely feedback, and by discharging her from her employment.

62. Based on Defendant's knowing and willful failure to accommodate Plaintiff's disability, Defendant took the adverse action of disciplining her for accurately reporting her time and by terminating her employment.

63. As a direct and proximate result of Defendant's termination of Plaintiff's employment, Plaintiff has sustained damages, including, without limitation, past and future wage and benefit losses, reputational damages, emotional distress, inconvenience, humiliation, and mental suffering.

## SECOND CLAIM FOR RELIEF

(Retaliation-CADA)

64. Plaintiff hereby incorporates all allegations of the Complaint as though fully set forth herein.

65. After Plaintiff returned from her disability related temporarily reduced schedule leave, Defendant retaliated against her by failing to assign her adequate work to constitute full time hours.

66. After Plaintiff returned from her disability related temporarily reduced schedule leave, Defendant retaliated against Plaintiff by disciplining her for failing to meet chargeability requirements, despite numerous attempts by Plaintiff to obtain additional work.

67. After Plaintiff returned from her disability related temporarily reduced schedule leave Defendant retaliated against her by failing to give her timely feedback about any concerns they had regarding her accounting of her time worked, and subsequently terminating her for alleged "timecard fraud."

68. As a direct and proximate result of Defendant's retaliation and termination of Plaintiff's employment, Plaintiff has sustained damages, including, without limitation, past and future wage and benefit losses, reputational damages, emotional distress, inconvenience, humiliation, and mental suffering.

## THIRD CLAIM FOR RELIEF

(Discrimination on the Basis of Disability – ADA)

69. Plaintiff hereby incorporates all allegations of the Complaint as though fully set forth herein.

70. Plaintiff is a member of a protected group, that is, she is or was, at the time of termination from employment, a disabled individual as defined by the Americans With Disabilities Act of 1990, as amended, 42 U.S.C. § 12102(2).

71. Plaintiff's disability, major depression and bipolar disorder, substantially limited her in one or more major life activities.

72. Plaintiff was otherwise qualified for the position, and she was performing her job in a satisfactorily manner.

73. When Plaintiff requested the reasonable accommodations, including a temporarily reduced schedule and timely feedback, Defendant approved the request. These requests did not place any undue burden on Defendant.

74. After Petitioner returned from her disability related reduced schedule, Defendant failed to provide Petitioner adequate work tasks to fill full time hours.

75. Defendant failed to provide timely feedback to Petitioner including that it was their position that time researching disability related resources to perform her job duties was not time worked for purposes of her time tracking.

76. Defendant failed to provide any feedback to Petitioner of concerns of "timesheet fraud" prior to the date of her termination.

77. Defendant consciously and purposefully discriminated against Plaintiff because of her disability in violation of the Americans with Disabilities Act of 1990, as amended by refusing to provide reasonable accommodation of timely feedback, and by discharging her from her employment.

78. Based on Defendant's knowing and willful failure to accommodate Plaintiff's disability, Defendant took the adverse action of disciplining her for accurately reporting her time spent on job-related matters and by terminating her employment.

79. As a direct and proximate result of Defendant's termination of Plaintiff's employment, Plaintiff has sustained damages, including, without limitation, past and future wage and benefit losses, reputational damages, emotional distress, inconvenience, humiliation, and mental suffering.

## FOURTH CLAIM FOR RELIEF

(Retaliation-ADA)

80. Plaintiff hereby incorporates all allegations of the Complaint as though fully set forth herein.

81. After Plaintiff returned from her disability related temporarily reduced schedule leave, Defendant retaliated against her by failing to assign her adequate work to constitute full time hours.

82. After Plaintiff returned from her disability related temporarily reduced schedule leave, Defendant retaliated against Plaintiff by disciplining her for failing to meet chargeability requirements, despite numerous attempts by Plaintiff to obtain additional work.

83. After Plaintiff returned from her disability related temporarily reduced schedule leave Defendant retaliated against her by failing to give her timely feedback about any concerns they allegedly had had regarding her accounting of her time worked, and subsequently terminating her for alleged "timecard fraud."

84. As a direct and proximate result of Defendant's retaliation and termination of Plaintiff's employment, Plaintiff has sustained damages, including, without limitation, past and future wage and benefit losses, reputational damages, emotional distress, inconvenience, humiliation, and mental suffering.

## FIFTH CLAIM FOR RELIEF

(Unpaid Overtime - Violation of the Colorado Wage Claim Act)

85. Plaintiff incorporates by reference all of the above paragraphs.

86. At all material times, Defendant has been an "employer" within the meaning of the Colorado Wage Claim Act, § 8-4-101, et seq.

12

87. At all material times, Defendant has employed "employees," including Plaintiff, within the meaning of the Colorado Wage Claim Act, § 8-4-101, et seq.  Plaintiff was an employee of Defendant within the meaning of the Wage Claim Act from March 2021 through February 2022.

88. At all relevant times, Plaintiff performed duties that did not qualify for an exemption from overtime under the Colorado Wage Claim Act, § 8-4-101, et seq.

89. At all material times, Plaintiff was not an "Administrative employee" within the meaning of the Colorado Minimum Wage Act, 7 CCR 1103-1 Rule 2.2.1 performing duties that regularly exercise independent judgment and discretion in matters of significance directly related to management policies or general business operations.

90. At all material times, Plaintiff was not an "executive" or "supervisor" within the meaning of the Colorado Minimum Wage Act, 7 CCR 1103-1 Rule 2.2.2.  Plaintiff did not supervise the work of at least two full-time employees nor did she have the authority to hire and fire, or to effectively recommend such action.

91. At all material times, Plaintiff was not a "professional employee" within the meaning of Colorado Minimum Wage Act, 7 CCR 1103-1 Rule 2.2.3.

92. At all material times, Plaintiff's primary duties included sample collection, field "supervision," and report writing.

93. Plaintiff's duties involving sample collection did not require the consistent exercise of discretion and judgment but was rather mechanical work routinely completed by interns and construction contractors without any advanced degree or knowledge.

94. Plaintiff's duties of field "supervision" did not involve the consistent exercise of discretion and judgment as these duties required her to report any matters that may be significant to a supervisor for decision making.

95. Plaintiff's duties of report writing did not involve the consistent exercise of discretion and judgement that required either the (1) knowledge of an advanced type in a field of science or learning customarily acquired by a prolonged course of specialized intellectual instruction and study, or (2) invention, imagination, originality or talent in a recognized field of artistic or creative endeavor.  Plaintiff's report writing duties primarily involved data entry into predetermined templates and was a task routinely completed by others without any advanced training or learning.

96. At all material times, Plaintiff was not an "outside sales person" within the meaning of Colorado Minimum Wage Act, 7 CCR 1103-1 Rule 2.2.4.

97. At all material times, Plaintiff was not an "owner or proprietor" within the meaning of Colorado Minimum Wage Act, 7 CCR 1103-1 Rule 2.2.5.

98. At all material times, Plaintiff was not a "taxi cab driver" within the meaning of Colorado Minimum Wage Act, 7 CCR 1103-1 Rule 2.2.6.

99. At all material times, Plaintiff was not an "in resident worker" within the meaning of Colorado Minimum Wage Act, 7 CCR 1103-1 Rule 2.2.7.

100. Plaintiff regularly worked more than forty hours per week for Defendants.

101. Plaintiff worked one or more hours in excess of forty hours per week, over the course of 46 weeks for which she was not compensated at the premium rate of time-and-a-half for overtime.

102. Defendants' records of Plaintiff's pay show a pay at a salary of $1000 per week, and for Paid Time Off at a rate of $25/hour.

103. Plaintiff is owed for an estimated 84.35 hours of overtime premium pay, estimated at an additional $3,163.12.

104. As a result of the foregoing conduct, as alleged, Defendant has failed to pay overtime wages due under the Wage Claim Act and Minimum Wage Order. These violations were committed knowingly, willfully and with reckless disregard of applicable law.

105. As a result, Plaintiff has been damaged in an amount to be determined at trial. Plaintiff hereby demands payment in an amount equal to all unpaid wages and overtime. Such payment should be made in care of undersigned counsel at the listed address.

## SIXTH CLAIM FOR RELIEF

**(Unpaid Overtime-Violation of the Fair Labor Standards Act)**

106. Plaintiff incorporates by reference all of the above paragraphs.

107. At all relevant times, Defendant has been an "employer" within the meaning of the Fair Labor Standards Act ("FLSA").

108. At all relevant times, Defendant has employed "employees," including Plaintiff, within the meaning of the FLSA.

109. Plaintiff was an employee of Defendant within the meaning of FLSA from March 2021 until February 2022.

110. At all material times, Plaintiff did not meet the requirements for the "executive exemption" as established under the Fair Labor Standards Act. 29 U.S.C. § 213.

111. Plaintiff neither managing the enterprise, nor did she manage a customarily recognized department or subdivision of the enterprise.

112. Plaintiff did not supervise the work of at least two full-time employees nor did she have the authority to hire and fire, or to effectively recommend such action.

113. At all material times, Plaintiff did not meet the requirements for the "administrative exemption" as established under the Fair Labor Standards Act. 29 U.S.C. § 213 as she did not perform duties that regularly exercise independent judgment and discretion in matters of significance directly related to management policies or general business operations.

114. At all material times, Plaintiff did not meet the requirements for the "learned professional" as established under the Fair Labor Standards Act. 29 U.S.C. § 213.

115. At all material times, Plaintiff's primary duties included sample collection, field "supervision," and report writing.

116. Plaintiff's duties involving sample collection neither required "advanced knowledge" nor did it require the consistent exercise of discretion and judgment as this work was routinely completed by interns and construction contractors without any advanced degree or knowledge.

117. Plaintiff's duties of field "supervision" did not involve the consistent exercise of discretion and judgment as she was required her to report any matters that may be significant to a supervisor for decision making.

118. Plaintiff's duties of report writing did not involve the consistent exercise of discretion and judgement that required either the (1) knowledge of an advanced type in a field of science or learning customarily acquired by a prolonged course of specialized

16

intellectual instruction and study, or (2) invention, imagination, originality or talent in a recognized field of artistic or creative endeavor.

119. Plaintiff's report writing duties primarily involved data entry into predetermined templates.

120. During Plaintiff's employment with Defendant, report writing duties similar to Plaintiff's duties were routinely completed by employees without any advanced knowledge or training.

121. As a result of the foregoing conduct, as alleged, Defendant has violated FLSA. These violations were committed knowingly, willfully, and with reckless disregard of applicable law.

122. As a result, Plaintiff has been damaged in an amount to be determined at trial.

## DOCUMENT PRESERVATION

123. As part of discovery, Plaintiff will be requesting certain documents and information from Defendant. Please note the document preservation instructions attached hereto.

## REQUEST FOR RELIEF

**WHEREFORE**, Plaintiff respectfully requests that the Court enter judgment in her favor and against Defendant as follows:

124. Awarding Plaintiff declaratory and/or injunctive relief as permitted by law and equity;

125. Awarding Plaintiff all economic and non-economic damages;

126. Awarding Plaintiff her compensatory damages, attorneys' fees and litigation expenses as provided by law;

127. Awarding Plaintiff her pre-judgment, post-judgment and moratory interest as provided by law;

128. Awarding Plaintiff liquidated damages as provided by law;

129. Awarding Plaintiff statutory penalties as provided by law; and

130. Awarding Plaintiff such other and further relief as the Court deems just and proper.

## JURY DEMAND

131. Plaintiff demands a trial by jury.

Respectfully submitted this 29th day of November 2022.

                              Respectfully submitted,

                              */s/ Rebekah Berry-Chaney*
                              Rebekah Berry-Chaney, Esq.
                              Kelli R. Riley, Esq.
                              Riley Law LLC
                              1750 Foxtrail Drive, Unit B
                              Loveland, CO 80538
                              *Attorneys for Plaintiff*

# DOCUMENT PRESERVATION INSTRUCTIONS

Plaintiff will be requesting electronic and other documentary evidence during discovery in this matter. This evidence will be of critical importance and Plaintiff wants to ensure that the types of documentary and electronic evidence that will be requested during the course of discovery are preserved.

As you may be aware, "[w]hen a lawyer who has been retained to handle a matter learns that litigation is probable or has been commenced, the lawyer should inform the client of its duty to preserve potentially relevant documents and of the possible consequences of failing to do so." Standard 10, Preservation of Documents, ABA Civil Discovery Standards (Aug. 2004). This duty "applies to information stored in an electronic medium or format…" Id. at Standard 29.

Various kinds of electronic data and other documents will be important in this lawsuit. The data

Plaintiff anticipates will be relevant includes, but is not limited to, the following:

- The portions of any database or system maintained or used that contains time stamps or other data, including timesheets and telephone records, relating to the hours worked by Plaintiff and putative opt-in plaintiffs and/or class members as well as their pay;

- Emails and other electronic and hard-copy documents pertaining to Defendants' decision to not pay the overtime premium and to not provide paid rest breaks;

- Emails and other electronic and hard-copy documents pertaining to Defendants' reliance on department of labor authority when deciding not to pay the overtime premium or to not provide paid rest breaks;

- Emails and other electronic and hard-copy documents pertaining to any audit or investigation performed by the department of labor;

- Emails and other electronic and hard-copy documents pertaining to the job duties performed by Defendants' employees, including Plaintiff;

- Emails and other electronic and hard-copy documents pertaining to the hours worked by Defendants' employees, including Plaintiff;

- Emails sent and received by Plaintiff, putative opt-in plaintiffs or class members, and their managers/supervisors;

- Emails and other electronic or hard-copy documents pertaining to Defendants' compliance with the Fair Labor Standards Act and/or state laws; and

- Emails and other electronic or hard-copy documents pertaining to Plaintiff and all other current or former employees. 6

This data, including all associated metadata, must be preserved. Therefore, Plaintiff requests that Defendants perform offline backups of any databases which contain information of the types identified above. Plaintiff also requests that Defendants perform offline backups of all current Microsoft Exchange (or other email) databases to external hard drives, preserving their native format. These backups should be done routinely from this point forward.

The laws and rules prohibiting destruction of evidence apply to electronically stored information in the same manner that they apply to other evidence. Therefore, Plaintiff requests that Defendants take every reasonable step to preserve this information until the final resolution of this matter, and discontinue all data destruction activities, including but not limited to, backup tape recycling policies, any automatic email deletion functions, and refrain from disposing of any relevant hardware or data storage. In short, Plaintiff requests that the utmost care be taken in the preservation of all relevant electronic data, including metadata.